**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: MI WINDOWS AND DOORS, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | **MDL No. 2333** No. 2:12-mn-00001 |
| CRAIG HILDEBRAND, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:12-cv-01261-DCN |
| vs. | ) ) ) | **ORDER** |
| MI WINDOWS AND DOORS, INC., | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on a motion to dismiss the amended complaint brought by defendant MI Windows and Doors, Inc. (MIWD). MIWD also asks the court to reject the request for equitable tolling contained in plaintiff's complaint. For the following reasons, the court grants the motion to dismiss and dismisses this case without prejudice.

## I.  BACKGROUND

On December 6, 2011, plaintiff Craig Hildebrand filed a class action complaint against MIWD in the United States District Court for the Eastern District of New York, alleging jurisdiction based on diversity of citizenship. MIWD filed its motion to dismiss on March 30, 2012. On May 15, 2012, the Judicial Panel on Multidistrict Litigation transferred the case to this court. Hildebrand filed an untimely amended complaint in this court on July 20, 2012, without either the court's leave or MIWD's consent. On November 7, 2012, after the parties had fully briefed and orally argued the matter, the

1

court struck Hildebrand's untimely amended complaint and dismissed his original complaint without prejudice. Hildebrand then properly filed a first amended complaint on November 27, 2012.

Hildebrand alleges that MIWD designed, manufactured, marketed, and sold certain vinyl windows – from its 3500, 4300, 8500, and similar series – that were defective. 1st Am. Compl. ¶ 2. He alleges that the windows contain leaky sill joints that do not prevent long-term water intrusion; faulty weep systems that do not effectively discharge water that penetrates the windows; and a defect that results in a loss of seal at the glazing along the bottom of the glass. Id. ¶¶ 4-6. These defects, Hildebrand claims, allow water to seep both into the windows themselves and into the interior of the homes in which the windows are installed, causing damage to both the windows and to "other property within the home." Id. Specifically, Hildebrand claims that the defective windows have caused water damage to the floor and backsplash he installed in his kitchen; water damage to the wood floors that he installed in his home's bedrooms; and mold and mildew within the windows themselves that "have contaminated the airspace within the home." Id. ¶ 16.

## II.  STANDARDS

### A.  Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1448 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). For diversity cases that are transferred in an MDL, "the law of the transferor district follows the case to the transferee district." Manual for

Complex Litigation (Fourth) § 20.132 (2004). Therefore, this court must apply New York substantive law and federal procedural law.

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Clark Street Wine & Spirits v. Emporos Sys. Corp., 754 F. Supp. 2d 474, 479 (E.D.N.Y. 2010). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. A complaint must contain sufficient factual allegations in addition to legal conclusions. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III. DISCUSSION

MIWD seeks dismissal of all counts of Hildebrand's complaint. As an initial matter, Hildebrand has voluntarily withdrawn Count IV of his first amended complaint, the claim for violation of the Magnuson-Moss Consumer Products Liability Act. Pl.'s Mem. in Opp'n to Mot. to Dismiss 1 n.1. Accordingly, the court will dismiss this claim without prejudice and without further discussion.

### A. Count I – Unfair & Deceptive Trade Practices in Violation of New York General Business Law (GBL) § 349

MIWD argues that Count I must be dismissed because Hildebrand fails to allege the necessary elements of GBL § 349 claim.

GBL § 349 prohibits deceptive business practices. To state a claim under GBL § 349, a plaintiff must allege that: "(1) the defendants' acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." Douyon v. N.Y. Med. Health Care, P.C., --- F. Supp. 2d ---, 2012 WL 4486100, at *12 (E.D.N.Y. Sept. 28, 2012) (quoting Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 74 (E.D.N.Y. 2010)); accord Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). A claim brought under Section 349 "is not subject to the pleading-with-particularity requirements of [Federal] Rule [of Civil Procedure] 9(b) but need only meet the bare-bones notice-pleading requirements of Rule 8(a) . . . ." Woods v. Maytag Co., No. 10-cv-0559, 2010 WL 4314313, at *14 (E.D.N.Y. Nov. 2, 2010) (quoting Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005)). Conclusory allegations, however, are insufficient to state a claim under Section 349. Id. at *15 (citing Moses v. Citicorp Mortg., Inc., 982 F. Supp. 897, 903 (E.D.N.Y. 1997); Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co., 834 F. Supp. 605, 610 (E.D.N.Y. 1993)).

In his complaint, Hildebrand alleges that MIWD "warranted, marketed, and advertised that the Windows were fit for the ordinary purpose for which such goods were used and were free from defects in materials and workmanship." 1st Am. Compl. ¶ 2; see also id. ¶ 26. Hildebrand further alleges that MIWD "had knowledge that the Windows were defective but took no action to . . . inform purchasers or owners of the . . . defects.

Instead, MIWD concealed this knowledge . . . [thereby committing] a violation of GBL § 349." Id. ¶¶ 10. Elsewhere in the complaint, Hildebrand alleges that he and other class members have suffered damages "as a direct and proximate cause of Defendant's violations of GBL § 349." Id. ¶ 61. These damages include payment for the installation of replacement windows, damage to other property within their homes, and diminution of the value of the homes. See id. ¶¶ 16, 40-43.

Though Hildebrand's first amended complaint has significantly fleshed out the injuries that he has suffered due to the allegedly faulty windows, it does not provide sufficient detail regarding the deceptive practices that MIWD allegedly undertook. Compare Woods, 2010 WL 4314313, at *16 ("Although the Plaintiff does not need to allege [facts relating to a GBL § 349 claim] with the same level of specificity as a fraud claim, general references to advertisements and statements will not be sufficient to allege a deceptive act or practice"), with Szymczak v. Nissan N. Am., Inc., No. 10-cv-7493, 2011 WL 7095432, at *15-16 (S.D.N.Y. Dec. 16, 2011) (Section 349 claim sufficiently pleaded by describing specific incidents in which defendant car manufacturer's employees misled plaintiffs about the scope of their vehicles' warranties). As with Hildebrand's initial complaint, the first amended complaint

> [F]ails to allege that Hildebrand ever saw or heard a deceptive advertisement, act, or practice related to MIWD's windows. MIWD's allegedly deceptive business practices and advertising could not have caused Hildebrand's injuries if Hildebrand was unaware of the false advertisements, statements, or actions. The allegation that MIWD's actions directly and proximately caused Hildebrand's injuries does not satisfy the Rule 8 pleading standard described in Twombly and Iqbal. Rather, it is a legal conclusion that the court need not accept for purposes of this motion to dismiss.

Order, Nov. 7, 2012, at 6.

Hildebrand's GBL § 349 claim fails.

5

### B. Count II – Negligence/Negligent Design; Count III – Strict Products Liability

As it did in its first motion to dismiss, MIWD argues that Hildebrand's tort and strict liability claims are barred by the economic loss doctrine. Hildebrand responds that his claims are not barred by the economic loss doctrine because the doctrine does not apply to damage to "other property" and because he has alleged damage to such other property.

The economic loss rule is a judicially made doctrine designed "to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 16 (2d Cir. 2000). In New York, "when a plaintiff suffers damages resulting from a nonaccidental cause, such as deterioration or breakdown of the product itself, the injury is properly characterized as 'economic loss' and the plaintiff is relegated to contractual damages." Praxair, Inc. v. Gen. Insulation Co., 611 F. Supp. 2d 318, 326 (W.D.N.Y. 2009) (citing Schiavone Constr. Co. v. Mayo Corp., 436 N.E.2d 1322 (N.Y. 1982) (reversing lower court decision)). When damages are sought for the failure of a product to perform its intended purpose, recovery is barred "for direct and consequential damages caused by a defective and unsafe product." Id. (citing Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek Int'l Corp., 752 N.Y.S.2d 767, 769 (App. Div. 2002)). The economic loss doctrine is, however, inapplicable where the defective product causes damage to "other property." Praxair, 611 F. Supp. 2d at 326.

Hildebrand alleges that MIWD's defective windows have caused damage to "other property" within his home, specifically, to wood and tile floors that he installed after he moved into his home, as well as to the airspace in his home that has been

6

contaminated by mold and mildew.  See, e.g., 1st Am. Compl. ¶¶ 16, 31, 37, 42.  Hildebrand appears to suggest that the wood and tile floors within his home constitute "other property" because he installed those features in his home after he purchased it.  However, Hildebrand's argument misses its mark.  Any damage done to the floors would fall squarely within the category of consequential damages for which recovery is barred by the economic loss rule.  See Atlas Air, Inc. v. Gen. Elec. Co., 791 N.Y.S.2d 620, 620-21 (App. Div. 2005) (recovery barred for business whose airplane was damaged by a defective airplane engine); Weiss v. Polymer Plastics Corp., 802 N.Y.S.2d 174, 175 (App. Div. 2005) (recovery barred for homeowners where application of a defective synthetic stucco substance damaged both the stucco itself and the underlying plywood siding); Amin Realty, LLC v. K&R Constr. Corp., 762 N.Y.S.2d 92, 93 (App. Div. 2003) (recovery barred for building owner where improperly-poured concrete foundation required the removal, repair, and re-installation of the first floor of a building); Hemming v. Certainteed Corp., 468 N.Y.S.2d 789 (App. Div. 1983) (recovery barred for class of homeowners where defective siding systems caused damage to the siding itself and consequential damages to homes).  Furthermore, the economic loss rule prevents recovery for contamination to the airspace within Hildebrand's home as the first amended complaint lacks allegations that Hildebrand has suffered personal injury from that contamination.[1]  See Prue v. Fiber Composites, LLC, No. 11-cv-3304, 2012 WL 1314114, at *6 (E.D.N.Y. Apr. 17, 2012) ("Neither physical nor mental injury is alleged, and mere exposure to unidentified health hazards, without more, does not constitute personal injury.")

---

[1] Hildebrand's opposition to MIWD's motion to dismiss appears to concede this point, as he makes no arguments on the subject.

Because the losses Hildebrand has suffered are the sort for which recovery is barred under the economic loss rule, the court dismisses Counts II and III.

### C. Count V – Breach of Express Warranty

MIWD asserts that Hildebrand's breach of express warranty claim must fail because he has failed to assert that the express warranty in question was a basis of the bargain.

In order to maintain an express warranty claim under New York law, a plaintiff "must prove that the statement falls within the definition of a warranty, that she relied on it, and that it became part of the basis for the bargain." Kraft v. Staten Island Boat Sales, Inc., 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010); see also Fagan v. AmericsourceBergen Corp., 356 F. Supp. 2d 198, 217 (E.D.N.Y. 2004); N.Y. U.C.C. § 2-313(1) (McKinney 2013). "The 'basis of the bargain' element requires a plaintiff to show that he or she relied on the seller's representations when deciding whether to purchase the goods." Fagan, 356 F. Supp. 2d at 217.

The first amended complaint states that "MIWD expressly warranted that the Windows are 'fully warranted against defects in workmanship and materials under normal use and service.'"[2] 1st Am. Compl. ¶ 91. MIWD's alleged statement certainly falls within the definition of a warranty. However, Hildebrand has not pleaded that he relied on this statement when purchasing his home. In fact, he appears to concede that he

---

[2] The first amended complaint references an "Exhibit A." 1st Am. Compl. ¶ 91. Hildebrand apparently intended to attach a copy of MIWD's express limited warranty to the first amended complaint. However, he failed to do so. The complaint does state that "Typical agreements for the purchase of homes include an assignment of manufacturers' warranties from the seller to the purchaser. This assignment would include warranties related to the Windows." Id. ¶ 28. This allegation does not establish that Hildebrand was assigned an express warranty relating to MIWD's windows when he bought his home. It is a generalized statement about common practices relating to home sales; it does not address the question of whether Hildebrand himself received an assignment of warranty when he purchased his house.

had not seen MIWD's warranty statement before purchasing his home.[3] Without pleading that he relied on MIWD's statement, Hildebrand cannot show that any of MIWD's warranty statements formed the basis of the bargain he made for his home.

Count V is dismissed.

### D. Count VI – Unjust Enrichment

MIWD argues that Count VI must fail because Hildebrand has failed to plead facts that demonstrate the elements of an unjust enrichment claim.

Under New York law, a plaintiff alleging unjust enrichment must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1110 (N.Y. 2011) (internal quotation marks omitted); see also Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). As New York's high court has explained, "it is well settled that the essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Sperry v. Crompton Corp., 863 N.E.2d 1012, 1018 (N.Y. 2007) (internal quotations omitted).

While a plaintiff need not be in privity with the defendant in order to state a claim for unjust enrichment, the relationship between the parties may not be "too attenuated." Id. (purchasers of overpriced tires could not maintain an unjust enrichment claim based

---

[3] See 1st Am. Compl. ¶ 97 ("Plaintiff, who did not directly purchase the Windows, did not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein.") The first amended complaint states that "Plaintiff and Class Members expected that a warranty for their Windows, separate and apart from their homebuilder warranty, existed when they purchased their homes." Id. ¶ 29. What Hildebrand and other class members may have expected is a different question from what they actually bargained for and received. The first amended complaint does not allege any facts that show why Hildebrand expected that his home's windows were under warranty or whether MIWD's statements or actions contributed to Hildebrand's mistaken expectation.

9

on alleged price-fixing by manufacturers of chemicals used in making tires); Georgia Malone & Co. v. Rieder, 973 N.E.2d 743, 746-47 (N.Y. 2012) (real estate brokerage who prepared due diligence for the purchase of a Manhattan apartment building could not assert an unjust enrichment claim against another brokerage that ultimately brokered the sale because the two brokerages "simply had no dealings with each other" and the complaint did not allege that the parties "had any contact regarding the purchase transaction"); Mandarin Trading Ltd., 944 N.E.2d at 1106-11 (art buyer could not maintain an unjust enrichment claim against appraiser who allegedly improperly valued a painting because there was no demonstrated relationship between the parties and the appraisal was addressed to a third party).

  Hildebrand argues that MIWD directly benefitted from his purchase of a home containing defective windows. Pl.'s Mem. in Opp'n to Mot. to Dismiss 19. He suggests that MIWD benefitted by not expending resources necessary to fulfill its warranties. Id. He also speculates that MIWD was enriched because "[h]ad Plaintiff known of the defective condition of Defendant's defective Windows and refused to purchase the home on such basis the value of the Defendant's Windows would have plummeted. Had Plaintiff known that the Windows did not perform as promised, Plaintiff would have expected renumeration [sic]." Id. Hildebrand argues that his relationship with MIWD is not too attenuated for his unjust enrichment claim to survive. For support, he relies principally on Waldman v. New Chapter, Inc., 714 F. Supp. 2d 398 (E.D.N.Y. 2010). In that case, the purchaser of a food supplement sued the supplement manufacturer for fraud and unjust enrichment, among other claims, arguing that the food supplement's packaging was misleading as to the quantity contained therein. Id. at 400-01. The

Waldman plaintiff had not purchased the supplement directly from the manufacturer; rather, she had bought the supplement from an organic supermarket which had itself purchased the supplement from the defendant.  Id. at 404 n.5.  Waldman's unjust enrichment claim survived a motion to dismiss because the court determined that "the indirect purchaser can assert such an unjust enrichment claim against the manufacturer of the *product* itself."  Id. at 404 (emphasis in original).

Hildebrand's reliance on Waldman is misplaced.  The relationship between Hildebrand and MIWD is significantly more attenuated than the relationship between the Waldman parties.  In Waldman, a product purchaser sued that product's manufacturer.  Here, the purchaser of a home is suing the manufacturer of one of the many materials that was used in the construction of the home that he bought from a previous owner.  As the Waldman court itself stated, "a product's indirect purchaser cannot assert an unjust enrichment claim against an entity that manufactured one of that product's *ingredients*."  Id. at 403 (emphasis in original).  MIWD's windows were one of many ingredients that made up the home that Hildebrand now owns.  Under New York law as explained by the Court of Appeals in Sperry, Mandarin Trading, and Georgia Malone, Hildebrand's unjust enrichment claim is too attenuated to survive a motion to dismiss.[4]

Count VI, Hildebrand's unjust enrichment claim, fails.

**E.  Count VII – Declaratory Relief**

Hildebrand has styled his request for declaratory relief as a separate count of the complaint.  He asks the court to declare that MIWD's windows are MIWD's windows are defective and that certain provisions of MIWD's warranty are void as unconscionable.

---

[4] As was also noted in the order dismissing the initial complaint, Hildebrand fails to allege any facts that support his conclusory allegation that MIWD benefitted financially from his purchase of his home.

11

Compl. ¶¶ 91(a)-(b). Hildebrand also asks the court to grant several forms of relief, including ordering MIWD to reassess all prior warranty claims and pay the full cost of repairs and damages. Id. ¶ 91(f). MIWD argues that Hildebrand's claim for declaratory relief cannot stand because there is no basis for providing such relief, and because the relief Hildebrand seeks can be addressed through substantive tort or contract law claims.

Declaratory relief is inappropriate at this stage, as the merits of Hildebrand's substantive claims have not been adjudicated. See, e.g., Cambridge Medical, P.C. v. Allstate Ins. Co., --- F. Supp. 2d ---, No. 11-4044, 2012 WL 5077481, at *5 (E.D.N.Y. Oct. 16, 2012) (denying a motion for declaratory relief where the underlying substantive claims could not be dispensed with on a motion to dismiss); Monster Daddy LLC v. Monster Cable Prods., Inc., No. 10-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Because Hildebrand's substantive claims must be dismissed, Count VII must also fail.

### F.  Estoppel from Pleading and Tolling of Applicable Statutes of Limitation

Finally, MIWD asks the court to strike Hildebrand's request for equitable tolling of the statute of limitations. "Federal courts have typically extended equitable relief only sparingly." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). In New York, equitable tolling "is applied only in rare circumstances when the defendant's fraudulent conduct either conceals the existence of a cause of action or acts to delay Plaintiff from commencing a lawsuit." Statler v. Dell, Inc., 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012). A plaintiff seeking equitable tolling of the statute of limitations "must show that

12

Defendant's action rendered Plaintiff unable, despite his due diligence, to commence a timely action." Id.

The court finds it unnecessary to strike the allegations regarding equitable tolling from the complaint, since all counts of the complaint will be dismissed. At this time, the court denies as moot MIWD's request to strike.

### IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** defendant's motion to dismiss; **DISMISSES** all counts of the complaint **WITHOUT PREJUDICE**; and **DENIES AS MOOT** defendant's motion to strike. Plaintiff shall have leave to file a second amended complaint within 20 days of the filing of this order, or else the clerk will be directed to close this case.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 3, 2013**
**Charleston, South Carolina**

13